# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA MARIE CRUZ,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Case No. 1:18-cv-00294-EPG<br><br>**FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for Disability Insurance Benefits and Supplemental Security Income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 4, 5).

At a hearing on May 7, 2019, the Court heard from the parties and, having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, finds as follows:

\\\

1

**A. The ALJ's Treatment of Plaintiff's Subjective Symptom Testimony**

Plaintiff challenges the Administrative Law Judge's ("ALJ") evaluation of Plaintiff's testimony. As to subjective testimony, the Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony ... simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so[.]

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). Given that there is objective medical evidence of an underlying impairment, the Court examines whether the ALJ rejected Plaintiff's subjective symptom testimony by offering specific, clear, and convincing reasons.

The ALJ provided the following reasons for the weight given to Plaintiff's subjective symptom testimony:

> Consistency of statements is a relevant factor considered in symptom evaluation. (SSR 16-3p). The claimant testified that she currently takes morphine. Her testimony, however, is inconsistent with her reports [sic] numerous medical professionals that she is <u>allergic</u> to morphine. (Exhibit 4F/pages 2, 6; Exhibit 13F/pages 3, 6; Exhibit 16F/pages 5, 6, 10, 11, 13, 14, 16, 17, 19; Exhibit 18F/page 8; Exhibit 19F/pages 3, 23; Exhibit 20F/pages 2, 6, 9, 16, 17, 19; Exhibit 25F/page 1). Some of these medical records document the claimant's report of <u>specific</u> allergic reactions to morphine, to include, severe facial swelling, hives, rash, edema, and vomiting. (Exhibit 19F/page 3; Exhibit 13F/page 3; Exhibit 16F/page 5). Notably, the claimant testified that <u>most</u> of her side effects are due to morphine. But, the reality is that such adverse and severe side effects are to be expected if the claimant is allergic to morphine and knows she is allergic to morphine, but yet continues to take it; and undermines the alleged severity of

impairment related symptoms. The claimant also testified that her hands are swollen. But the fact that the claimant reported swelling (edema) among her list of allergic reactions to morphine casts doubt on the possibility that the swelling in her hands is an impairment related symptom and appears more likely an allergic reaction to morphine. (Exhibit 16F/page 5; Exhibit 19F/page 3). These relevant symptom evaluation findings were considered in the RFC assessment.

Other inconsistent statements are noted. The claimant testified that her medications do not alleviate her pain "totally" such that her hands hurt all the time rendering it hard for her to hold small things like a pen. Her testimony, however, is inconsistent with her report on a nurse visit to Dr. Myers' treatment facility wherein the claimant reported that she 'feels medication is working' to control pain symptoms. (Exhibit 13F/page 2). The claimant testified that as a result of pain symptoms, she must rest upon waking up, rest upon picking up dishes in the morning, and rest upon taking her dogs out. She testified that she runs out of energy and must take a 1 to 2 hour nap. The need for significant breaks between activities tends to demonstrates [sic] the limiting effects of her pain symptoms. Her testimony, however, is inconsistent with her report to physical therapist, Andrew Bagdasrian, who noted the claimant's report that as a result of aquatic therapy, she no longer has to take significant breaks to complete chores and activities of daily living at home. (Exhibit 21F/page 9). Clearly, the claimant's report to various treating professionals demonstrates greater functional capacity than the claimant represented at the administrative hearing and were inconsistencies were considered in the functional evaluation.

Activities of daily living are another factor relevant to symptom evaluation. (SSR 16-3p). Notwithstanding the claimant's pain symptoms, the claimant retains physical capacity for a broad scope of daily activities. The claimant testified that she is able to drive, she is able to make the bed, do the dishes, "clean up" the den, engage in other housework, and shop for groceries. Additionally, the claimant testified that she "takes her dogs out." This activity requires pushing, pulling, handling, and gripping, of more than one animal. The claimant's ability to do this activity, undermines the alleged severity of upper extremity symptoms. To this end, the record documents at least one occasion wherein the claimant reported that she helped her daughter move over the weekend. (Exhibit 6F;/page 38). The claimant testified that does not use a computer or keyboard because of pain symptoms. Yet, the claimant was able to type and prepare a lengthy addendum in support of her Exertional Activities Questionnaire to the agency. (Exhibit 3E/pages 4, 5, 6). She reported to Dr. Spivey that she can use a cellphone and computer. (Exhibit 7F/page 2). In sum, the scope of the claimant's activities of daily living demonstrated by the record does not coincide with the limited function alleged at the administrative hearing.

> Finally, the alleged severity and limiting effects of the claimant's impairment related symptoms are not consistent with the objective medical evidence. (SSR 16-3p). The physical examination findings from the claimant's emergency presentation represent the most current and recent objective clinical findings in the record. On her September 2016 presentation, physicians observed a nontender back; normal range of motion without clubbing, cyanosis or edema on musculoskeletal exam; and normal motor strength. (Exhibit 20F/page2). These objective clinical findings tend to demonstrate intact physical function. A neurology consultation by Jeffrey Levin, MD in May 2016 noted some thenar weakness and positive Tinel signs in both wrists, which is consistent with the sever impairment findings herein, but, Dr. Levin observed intact and normal 2+ reflexes, and normal tandem gait "without difficulties." (Exhibit 25F/page 1). These objective findings do <u>not</u> lend support to the claimant's testimony of limited ability to sit, stand, or walk.

(A.R. 30-31) (emphasis in original).

The Court takes issue with some of these reasons. While it appreciates the ALJ's concern with Plaintiff taking morphine notwithstanding Plaintiff's allergy to it, the ALJ's conclusion that Plaintiff's impairments are in fact due to the morphine are wholly speculative. No doctor has found that Plaintiff's symptoms are due to the morphine, rather than her medical impairments. This part of the Court's reasoning constitutes impermissible medical opinion and does not provide a valid reason to discount Plaintiff's symptom testimony. If the Court really believed Plaintiff's symptoms were due to morphine, she should have obtained a medical opinion to investigate her suspicion. But, without such a medical opinion, it is improper for an ALJ to conclude that Plaintiff's symptoms were due to some other cause.

The ALJ's reasoning based on Plaintiff's care of her dogs is also not supported by the record. It is not clear from the record that Plaintiff even walks her dogs, not to mention engages in the "pushing, pulling, handling, and gripping, of <u>more than one animal</u>." (A.R. 30) (emphasis in original). Plaintiff testified at the hearing that she "take[s] my dogs out," and then "bring[s] my dogs back in," not that she took them for a walk. It is possible that she lets them out into a yard. This ambiguous statement by Plaintiff does not provide a clear and convincing reason to discount her symptom testimony.

Nevertheless, numerous other reasons given by the ALJ are supported by the record, including the inconsistencies between what Plaintiff told the ALJ and what she told medical professionals regarding pain, the need for rest, and her use of a cellphone and computer. Additionally, the ALJ's summary of the objective medical evidence that is inconsistent with Plaintiff's testimony is supported by the record. (A.R. 30-31). These reasons are sufficiently specific, clear, and convincing.

### B. ALJ's Weighing of Opinions by Dr. Myers and Dr. Kaplan

Plaintiff also challenges the decision of the ALJ on the ground that she improperly gave little weight to the opinions of Plaintiff's treating physician, Dr. Myers, and examining physician, Dr. Kaplan. The Ninth Circuit has held regarding such opinion testimony:

> The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician. *Id.* § 404.1527(c)(2)–(6). "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("[The] reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

*Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). Both opinions at issue here were contradicted by other medical opinions. Thus, this Court examines whether the ALJ provided specific and legitimate reasons supported by substantial evidence for giving little weight to Dr. Myers' and Dr. Kaplan's opinions.

The ALJ gave the following reasons for the weight given to Dr. Myers' opinions. Regarding Dr. Myers' opinions on Plaintiff's mental limitations, the ALJ stated:

5

> The undersigned afford little weight to this opinion. The extreme limitations in activities of daily living as opined by Dr. Myers is inconsistent with the claimant's report of daily activities; evidence does not support marked limitation in social functioning, and, the clinical tests on mental status examination do not support marked limitation in concentration, persistence, and pace. Additionally, Dr. Myers only established care of the claimant in September 2016 to demonstrate longitudinal treatment; and, treatment notes from Dr. Myers do not document counseling for the claimant's alleged mental impairments.

(A.R. 32).

Regarding Dr. Myers' opinions on Plaintiff's physical limitations, the ALJ stated:

> The undersigned gives the opinion little weight for two specific reasons. First, Dr. Myers' exertional assessments indicate that the limitations were "per patient." It follows, that the limitations opined are essentially, the claimant's subjective allegations and not Dr. Myers' medical opinion. Second, the opinion is not supported by the objective medical evidence of record.

(A.R. 32-33). For the reasons discussed more fully at the hearing, the Court finds that these reasons are sufficiently specific and legitimate and supported by substantial evidence. Among other things, Plaintiff had a notable lack of mental health treatment, the RFC incorporated limitations on mental tasks consistent with the evidence, and Dr. Myers had not treated Plaintiff until September 2016, well after the alleged onset in 2013. Additionally, the reasons given for discounting Plaintiff's testimony apply to these opinions as well.

Regarding Dr. Kaplan's opinion, the ALJ stated:

> Little weight is given to this opinion for several reasons. First, Dr. Kaplan's opinion was issued in connection with the claimant's worker's compensation action. Worker's compensation cases apply different standards and rules than Social Security cases. Second, Dr. Kaplan's opinion that the claimant is totally disabled improperly makes a determination that is reserved to the Commissioner. Finally, Dr. Kaplan's opinion is largely inconsistent with other objective evidence in record.

(A.R. 32). The ALJ is correct in that Dr. Kaplan's conclusions concern disability under the worker's compensation standard, and do not set forth specific limitations appropriate for incorporation into an RFC. (A.R. 579 ("The claimant has been temporarily but totally disabled ever since her date of injury of 8/2/123.")). While the last statement about objective evidence is conclusory and without citations, the rest of the ALJ's opinion sufficiently discusses contrary objective evidence. Accordingly, the Court finds that the reasons given for discounting Dr. Kaplan's opinion are sufficiently specific and legitimate and supported by substantial evidence.

**C. Conclusion**

Thus, the Court finds that the decision of the Commissioner of Social Security is supported by substantial evidence, and the same is hereby affirmed.

The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **May 13, 2019**  /s/ Erin P. Grosjean
UNITED STATES MAGISTRATE JUDGE